# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| JAMES E. MCDONOUGH, JR., EXECUTOR OF THE ESTATE OF JAMES E. MCDONOUGH, *Plaintiff,* v. AETNA LIFE INSURANCE COMPANY and VIVENDI HOLDING I CORP., *Defendants.* | CIVIL NO. 3:09cv00071 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

James E. McDonough, Jr. ("Plaintiff"), executor of the estate of James E. McDonough ("Decedent"), filed this suit pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 ("ERISA"), alleging the following: 1) failure to provide plan documents as required by ERISA; 2) improper denial of benefits; 3) estoppel; and 4) breach of fiduciary duty. This matter is now before me on Defendants' motion to dismiss (docket no. 10) Counts I, III, and IV of the Complaint and to dismiss Plaintiff's jury demand, and on Defendants' Objections (docket no. 26) to a Magistrate Judge's order granting Plaintiff limited discovery on a conflict of interest question. For the reasons stated below, Defendants' motion to dismiss will be granted in part and denied in part, and I will deny Defendants' objections to the discovery order.

## I. Factual Allegations

Plaintiff has filed suit against Aetna Life Insurance Company ("Aetna") and Vivendi Holding I Corporation ("Vivendi," or "Vivendi S.A.") to recover benefits and to enforce rights under an employee medical plan. Decedent was a senior executive employee of Joseph E. Seagrams & Sons, Inc. ("Seagrams"). In 2000, Seagrams merged with Vivendi S.A. Following

the merger, Vivendi continued to manage the plans of Seagrams' former employees, including Decedent. Decedent was covered by one or more benefit plans administered by Aetna pursuant to an agreement between Vivendi and Aetna (collectively, "Defendants"). Plaintiff claims that, despite Decedent's coverage and compliance with the applicable plans, Defendants have denied benefits to which Decedent was entitled under the plans.

In 2006, Decedent underwent open heart surgery, subsequent to which he was disabled and required around-the-clock care in his home. In 2006, Decedent received home health care for several weeks from Care Advantage Plus, LLC. Claims were submitted to Aetna for that care, and the claims were paid. Later in 2006, it became apparent that Decedent would continue to need home health care of the type that had been provided by Care Advantage Plus. Decedent's assistant contacted Aetna to seek assurance that such home health care would continue to be covered by Defendants. Decedent's assistant was assured that home health care from a licensed home health care agency would be covered.

Based on the assurances received from Aetna, from late 2006 until his death in 2008, Decedent contracted with various licensed home health care agencies to provide him with home health care. Despite payment for identical medical services in 2006, and despite assurances that home health care would be covered, Defendants refused to pay for Decedent's home health care from January 2007 to March 2007. Decedent's son wrote to Aetna on April 23, 2007, stating that Aetna had previously informed him in a telephone call on November 30, 2006, that "[h]ome health care from a licensed health care agency is covered under this plan." Neither Aetna nor Vivendi disputed that such care was covered, and Decedent's home health care was covered from April 2007 to August 2007. Then, in August 2007, Aetna again began denying Decedent's claims for home health care. Decedent's son contacted Aetna and was told that the cost of the

home care would be covered if a doctor's note was submitted with the claims. Accordingly, Decedent's treating physician drafted a letter describing his condition and stating that 24-hour home care was necessary. That letter was attached to further claims submitted to Aetna. Aetna also informed Care Advantage Plus that the cost of Decedent's care would be covered if the care was deemed necessary by a physician. Nonetheless, despite promises to cover Decedent's home health care expenses if accompanied by a doctor's note and deemed necessary by a physician, and despite Decedent's physician's letter to Aetna and Vivendi stating that such care was necessary, Defendants continued to refuse to pay the cost of Decedent's care.

Plaintiff states that, beginning in early 2008, Decedent and/or Plaintiff made multiple requests to Defendants for a copy of any Summary Plan Description ("SPD") or insurance plan covering Decedent. Despite those requests, and although Decedent was covered by several plans until his death in 2008, Defendants provided documents for only two plans: a copy of the Aetna Major Medical Plan, dated April 2, 2002, and a copy of the Aetna Major Medical Supplement, dated January 1, 2004. According to Plaintiff, there are relevant documents from other plans offered by Defendants, and there is an SPD and/or an insurance policy for 2007 and 2008 for the Aetna Major Medical Plan and the Aetna Major Medical Plan Supplement; however, Defendants have not provided documents for these years.

In a letter dated March 5, 2008, Vivendi acknowledged that "[Decedent] was enrolled in the Retired Senior Executive Supplement Plan." Plaintiff asserts that no document provided by Vivendi or Aetna has ever borne that title. On July 18, 2008, counsel for Plaintiff wrote to Vivendi and enclosed a copy of the Supplemental Major Medical Insurance Benefits document which promised 100% coverage of all costs incurred. The letter stated, in pertinent part: "I enclose what I assert is the Retired Senior Executive Supplement Plan. If you have additional

information, please provide that to me. Otherwise, I will assume that you agree that the attached document is the insurance plan." The letter also asked why the plan's promise of 100% coverage was not being honored. According to Plaintiff, Defendants have not answered these inquiries, nor provided the requested documents, and Defendants' refusal to provide the requested information has prevented Plaintiff from pursuing claims for coverage.

## II. Standard of Review

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). In considering a Rule 12(b)(6) motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *See id.* at 244; *Warner v. Buck Creek Nursery, Inc.*, 149 F.Supp.2d 246, 254–55 (W.D. Va. 2001). The plaintiff must allege facts that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). The plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal* at 1949 (citing *Twombly* at 555).

## III. Discussion

A. <u>Count I: Failure to Provide Plan Documents</u>

Plaintiff contends that Defendants failed to provide him with requested documents concerning Decedent's benefits plan or plans as required by ERISA. Under 29 U.S.C. §

1024(b)(4), "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." The purpose of this disclosure requirement is to ensure that "the individual participant knows exactly where he stands with respect to the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 103 (1989) (internal quotation omitted). Furthermore, pursuant to 29 U.S.C. § 1002(16)(A)(i), the term "administrator" means:

> (i) the person specifically so designated by the terms of the instrument under which the plan is operated;
> (ii) if an administrator is not so designated, the plan sponsor; or
> (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

Defendants argue that Count I should be dismissed against both Aetna and Vivendi.

As to Aetna, Defendants argue that Aetna cannot be held liable for the failure to supply plan documents because such liability may only be found against the designated plan administrator. *See Jones v. UOP*, 16 F.3d 141, 144 (6th Cir. 1994) (" [29 U.S.C. § 1024(b)(4)] is plain: if a plan administrator is designated in the plan instrument, that is who has the statutory duty to respond to requests for information in timely fashion under threat of monetary penalty if he fails to do so."). According to Defendants, Aetna is not the plan administrator, and the plan documents do not designate it as such.[*]

As to Vivendi, Defendants similarly argue that Count I should be dismissed. In support, Defendants cite 29 C.F.R. § 2520.104-24, which exempts certain types of employee welfare

---

[*] In support, Defendants submit as Exhibits 7 and 8 to their Brief in Support copies of Vivendi's completed Forms 5500, forms required by the IRS related to employee benefits plans such as Vivendi's. In those forms, Vivendi is listed as the "plan sponsor." It is unclear whether a "plan sponsor" is the same as a "plan administrator."

5

benefits plans, often referred to as "top hat" plans, from ERISA's disclosure requirements. The exemption from ERISA's disclosure requirements is available to plans:

> (1) Which are maintained by an employer primarily for the purpose of providing benefits for a select group of management or highly compensated employees, and
>
> (2) For which benefits (i) are paid as needed solely from the general assets of the employer, (ii) are provided exclusively through insurance contracts or policies, the premiums for which are paid directly by the employer from its general assets, issued by an insurance company or similar organization which is qualified to do business in any State, or (iii) both.

29 C.F.R. § 2520.104-24(c).

Defendants argue that where an ERISA plan is maintained by an employer for the purposes of providing benefits to a select group of management or highly compensated employees, the plan administrator is exempt from any duty to furnish the plan documents. 29 C.F.R. § 2520.104-24; *See also Taylor v. Washington Mutual, Inc.*, No. 04-0521-M, 2007 WL 4239446 at *4-5 (W.D. La. Nov. 29, 2007) (citing 29 C.F.R. §2520.104-24); *Dabertin v. HCR Manor Care, Inc.*, 177 F.Supp.2d 829, 947 (N.D. Ill. 2001) (same). In support, Defendants note that in the instant Complaint, Plaintiff alleges that Decedent was a senior executive of Seagrams and was covered by an employer-provided health care plan. Plaintiff's Exhibit 4, the summary of coverage for the Aetna Major Medical Plan Supplement, states that eligible employees are senior executive employees. Additionally, in Plaintiff's Exhibit 5, a letter from Vivendi to Plaintiff, Vivendi acknowledged that Decedent was enrolled in the Retired Senior Executive Supplemental Plan. Additionally, Defendants argue that their Forms 5500, filed as required with the IRS, establish that the plan benefits are paid from Vivendi's general assets and/or through insurance as required by § 2520.104-24(c)(2). Thus, Defendants argue, the plan under which Plaintiff seeks relief is precisely the type of "top hat" plan that is exempt from ERISA disclosure requirements.

Finally, Defendants argue that the penalty provisions of 29 U.S.C. § 1132(c), the statutory provision that specifies the available remedy for non-disclosure, must be strictly construed. *See e.g.*, *Colin v. Marconi Commerce Sys. Employees' Retirement Plan*, 335 F.Supp.2d 590, 612 (M.D. N.C. 2004) (citing *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 653-54) (4th Cir. 1996). Defendants add that the penalty provisions for nondisclosure are only implicated if the plan administrator receives "clear notice" of the information requested. *See Faircloth*, 91 F.3d at 655 (citing *Anderson v. Flexel, Inc.*, 47 F.3d 243, 248 (7th Cir. 1995) (holding that a request for documents under § 1024(b)(4) necessitates a response from an administrator when it gives the administrator "clear notice" of the information sought)). Defendants argue that Plaintiff never provided the requisite "clear notice" that he was requesting the self-funded medical plan or the administrative service contract between Aetna and Vivendi. Finally, Defendants assert that, contrary to Plaintiff's allegations, they provided Plaintiff with the most current versions of the summary plan descriptions at the time requested.

I conclude that Plaintiff has sufficiently stated a claim in Count I of the Complaint. Plaintiff alleges that, prior to filing his Complaint, he made numerous requests of both Aetna and Vivendi to provide information concerning the plan. Yet, despite those requests, Plaintiff was only provided with a portion of the requested documents, and even those were outdated. Plaintiff also alleges that while Defendants have provided him with older summaries of the relevant plan, Defendants did not, as required by ERISA, "furnish a copy of the *latest updated* summary plan description." 29 U.S.C. § 1024(b)(4) (emphasis added).

Defendants maintain that Aetna is not the plan administrator; Plaintiff contends that Aetna is the Plan Administrator. Plaintiff also argues that the administrative services contract between Aetna and Vivendi further demonstrates that Aetna is the plan administrator, which

states in relevant part that "Aetna will provide the Contractholder with services for the administration and operation of the Plan." More generally, Plaintiff alleges that all documents provided to Plaintiff by Defendants – from explanation of benefits, to SPDs, to invoices – all named Aetna, and not Vivendi or some other entity. According to Plaintiff, claims, appeals, reimbursement requests, documentation, and all other aspects of plan operation were controlled by Aetna, indicating that Aetna is in fact the plan administrator.

Defendants essentially argue that the facts alleged by Plaintiff regarding both Aetna's status as the plan administrator and Aetna's failure to provide plan documents are untrue. However, the purpose of a motion to dismiss is not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). Rather, at this stage, the Court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *See id.* at 244; *Warner v. Buck Creek Nursery, Inc.*, 149 F.Supp.2d 246, 254–55 (W.D. Va. 2001). I conclude that Plaintiff has sufficiently stated a claim for failure to provide plan documents under 29 U.S.C. § 1024(b)(4). Accordingly, Defendants' Motion to Dismiss Count I against Aetna will be denied.

Regarding Vivendi, Defendants similarly focus on the alleged facts in Plaintiff's Complaint in support of their Motion to Dismiss. Defendants ask the Court to essentially conclude as a factual matter that Decedent's benefits derived from a "top hat" plan, and the plan is therefore exempt from ERISA's disclosure requirements. Moreover, Defendants argue that Vivendi provided the requisite documents to Plaintiff, and that they failed to receive "clear notice" that would trigger the requirement to furnish those documents. However, a motion to dismiss is not the appropriate stage for the Court to make factual conclusions or resolve factual

disputes. Viewing the allegations as I must and drawing all reasonable inferences in favor of Plaintiff, I conclude that granting Defendants' Motion to Dismiss Count I as to Vivendi would be premature. Accordingly, Defendants' Motion to Dismiss Count I will be denied.

    B. <u>Count III: Estoppel</u>

As an initial matter, any *state* law claims of estoppel are clearly preempted by ERISA. *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 238 (4th Cir. 2008) (citing *Holland v. Burlington Indus.*, 772 F.2d 1140 (4th Cir. 1985)). However, courts can consider such a claim as part of the federal common law of ERISA, at least in limited circumstances. *Jenkins v. Montgomery Indus., Inc.*, 77 F.3d 740, 743 (4th Cir. 1996) ("Congress intended courts to fill in [ERISA's] gaps by developing a federal common law of rights and obligations under ERISA-regulated plans.") (citations and quotations omitted). Indeed, an estoppel claim based in federal common law in an ERISA action can proceed to the extent that it does not require a court to vary from the written language of an ERISA plan. "Use of estoppel principles to effect a modification of a written employee benefit plan would conflict with ERISA's emphatic preference for written agreements." *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 58 (4th Cir. 1992) (citations and quotations omitted). When a plaintiff alleges that an oral representation on which he detrimentally relied forms the basis of a federal estoppel claim, "[o]ral or written modifications to a plan . . . are of no effect. Equitable estoppel principles, whether denominated as state or federal common law, have not been permitted to vary the written terms of a plan." *Id.* at 59. *See also Bakery & Confectionary Union & Industry Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1027 (4th Cir. 1997) ("In this circuit, equitable estoppel is not available to modify the written terms of an ERISA plan in the context of a participant's suit for benefits.") The rationale for disallowing estoppel claims to alter a plan's written terms is the need to protect plans from

undefined liabilities that could compromise the financial integrity of a group health insurer. *Coleman*, 969 F.2d at 60.

Although estoppel claims in ERISA cases are not permitted where the claim seeks to modify the written terms of an ERISA plan, estoppel claims in ERISA actions are not prohibited outright. *Sentara Virginia Beach Gen. Hosp. v. LeBeau*, 182 F.Supp.2d 518, 521-22 (E.D. Va. 2002) ("[T]he Fourth Circuit has never held that equitable estoppel principles are off limits in developing federal common law for ERISA-governed actions. In fact, it has affirmed that some federal common law estoppel claims may be valid if all the elements of estoppel are satisfied." (citing *Elmore v. Cone Mills Corp.*, 23 F.3d 955 (4th Cir. 1994))). However, the Court should be hesitant to apply common law concepts to ERISA claims. *Wilson v. Aetna Life Ins. Co.*, 497 F.Supp.2d 710, 713 (M.D.N.C. 2007) ("[A]lthough it should be 'reluctant' to do so, this Court may apply common law concepts (such as equitable estoppel) to fill in ERISA's gaps when the statute requires an 'interstitial fix.'") (quoting *Rego v. Westvaco Corp.*, 319 F.3d 140, 148 (4th Cir. 2003))).

I conclude that dismissal of Plaintiff's estoppel claim would be premature. Although such a claim is not permitted where a plaintiff seeks to alter the terms of a written plan, it is not yet clear what written terms Plaintiff's estoppel claim might seek to alter. Indeed, at this stage of the litigation, it is not at all clear precisely what terms, or even what plans, applied to Decedent's health coverage. Plaintiff has alleged that as many as five separate plans may be applicable to Decedent's care. While the identity and extent of the applicable plans remains a factual dispute, the Court cannot conclude that an estoppel claim is impermissible. Accordingly, Defendants' Motion to Dismiss Count III will be denied.

C. Count IV: Breach of Fiduciary Duty

Plaintiff's claim for breach of fiduciary duty is brought under 29 U.S.C. § 1132(a)(3), which provides that

[a] civil action may be brought—

* * *

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

In *Varity v. Howe*, 516 U.S. 489 (1996), the Supreme Court held that 29 U.S.C. § 1132(a)(3) authorizes lawsuits for individualized equitable relief for breach of fiduciary obligations. Specifically, the Court in *Varity* held that Congress intended § 1132(a)(3) to be a "catchall" ERISA provision that acts "as a safety net, offering appropriate equitable relief for injuries caused by violations that [ERISA] does not elsewhere adequately remedy." *Id.* at 512. Section 1132(a)(3) "authorizes some individualized claims for breach of fiduciary duty, but not where the plaintiff's injury finds adequate relief in another part of ERISA's statutory scheme." *Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 105 (4th Cir. 2006) (citation omitted). Furthermore, "[w]hen a beneficiary simply wants what was supposed to have been distributed under the plan, the appropriate remedy is [29 U.S.C. § 1132(a)(1)(B)]." *Coyne & Delaney Co. v. Blue Cross & Blue Shield*, 102 F.3d 712, 715, (4th Cir. 1996) (internal quotation omitted).

Plaintiff's breach of fiduciary duty claim is that, "[i]n denying Plan benefits to [Decedent], withholding documentation, misrepresenting that home health care would be covered by the Plans, and in rendering contrary, conflicting and arbitrary decisions, [Defendant] breached its fiduciary duty to [Decedent]." (Complaint ¶61). As is made clear from the Complaint, what Plaintiff seeks in his breach of fiduciary duty claim is really an alternative

11

avenue to pursue claims available under other ERISA provisions. Indeed, Plaintiff's allegations supporting his breach of fiduciary duty claim essentially restate the basis of his claims for failure to provide plan documents, improper denial of benefits, and estoppel. In this Circuit, a breach of fiduciary duty claim under ERISA can proceed in certain circumstances, but not "where the plaintiff's injury finds adequate relief in another part of ERISA's statutory scheme." *Korotynska*, 474 F.3d at 105. Nothing in the Complaint indicates that Plaintiff's breach of fiduciary duty claim is premised on anything other than alleged facts that serve as the basis of already recognized avenues to relief under ERISA. Accordingly, Count IV of Plaintiff's Complaint will be dismissed.

D. Plaintiff's Jury Trial Demand

In *Phelps v. C.T. Enterprises, Inc.*, 394 F.3d 213 (4th Cir. 2005), the Fourth Circuit held that a plaintiff making a denial of benefits claim under 29 U.S.C. § 1132(a)(1)(B) is not entitled to a jury trial. The court also held that a plaintiff making a breach of fiduciary duty claim under § 1132(a)(3) is not entitled to a jury trial. *Id.* In *Varghese v. Honeywell Int'l, Inc.*, 424 F.3d 411, 415 n.5 (4th Cir. 2005), the Fourth Circuit, citing *Phelps*, similarly held that a plaintiff's claim for failure to provide requested ERISA plan documents could not be tried to a jury. In *Phelps*, the Fourth Circuit stated:

> In *Berry v. Ciba-Geigy*, 761 F.2d 1003 (4th Cir. 1985), this court considered whether a claimant under ERISA could insist upon a jury trial. We decided that congressional silence on the issue in the text of the statute "returned [the question] to the common law of trusts." *Id.* at 1007. Under such law, "proceedings to determine rights under employee benefits plans are equitable in character and thus a matter for a judge, not a jury." *Id.* Putting such issues to a jury, we held, would erode the deference to the ERISA administrator that the Act's "abuse of discretion" standard required. *Id.*

Despite Fourth Circuit case law that appears to clearly deny the right to a jury trial in ERISA cases, Plaintiff argues that the Supreme Court opened the door to ERISA jury trials in

12

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002). In *Great-West*, the Supreme Court held that Great-West's attempt to compel a plan participant to make restitution to the plan for benefits paid previously to the participant and subsequently recovered by the participant against a third-party tortfeasor did not constitute the "appropriate equitable relief" required to make a claim under 29 U.S.C. § 1132(a)(3). In so holding, the Court stated that

> almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for money damages, as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from defendant's breach of legal duty.

*Id.* at 210 (citations and quotations omitted). "And [m]oney damages are, of course, the classic form of *legal* relief." *Id.* (citations omitted). "A claim for money due and owing under a contract is 'quentessentially an action at law.'" *Id.* (quoting *Wal-Mart Stores, Inc. v. Wells,* 213 F.3d 398, 401 (7th Cir. 2000)). With that language of *Great-West* as a backdrop, Plaintiff argues that *Great-West* establishes that some claims under ERISA are legal in nature, and before striking a party's request for a jury trial in an ERISA case, a court must first determine if the claim is legal in nature, and thus whether the claimant is entitled to a jury under the Seventh Amendment.

Notably, in *Phelps*, 394 F.3d 213 (4th Cir. 2005), a case decided three years after *Great-West*, the Fourth Circuit makes no mention of *Great-West*, and states clearly that an ERISA claimant is not entitled to a jury trial. Moreover, *Great-West* makes no mention of the right to a jury trial in an ERISA action. Rather, *Great-West* is properly read as an analysis of the propriety of certain actions brought pursuant to 29 U.S.C. § 1132(a)(3). *Great-West* does not support the proposition that Plaintiff is entitled to a jury trial, and no decisions from the Fourth Circuit indicate otherwise. Indeed, for each claim that Plaintiff alleges, the Fourth Circuit has plainly

held that a jury trial is not available. Accordingly, Plaintiff's request for a trial by jury will be denied.

E. Objections to Discovery Order

On February 25, 2010, United States Magistrate Judge B. Waugh Crigler issued an Order modifying the Pretrial Order and granting "limited discovery on the question of conflict of interest as is presented by the dual structures of claims administration and funding in this case." The Defendants have objected to Judge Crigler's granting of limited discovery, arguing that discovery should not be permitted beyond the administrative record on conflict of interest.

As a general rule, the standard of review applied by this Court depends upon whether the issue decided by the Magistrate Judge is dispositive or nondispositive of the litigation. For nondispositive matters, the Court reviews a decision of the Magistrate Judge for whether it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). In general, pretrial discovery matters are nondispositive because they do not resolve the substantive claims for relief alleged in the pleadings. *See Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990). Therefore, such discovery orders are reviewed under the clearly erroneous or contrary to law standard of review. A finding is "clearly erroneous" when, although there is evidence to support it, the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gympsum Co.*, 333 U.S. 364, 395 (1948); *Harman v. Levin*, 772 F.2d 1150, 1153 (4th Cir. 1985). "[I]t is extremely difficult to justify alteration of the magistrate judge's nondispositive actions by the district judge." 12 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3069 (3d. ed. 1998)).

In *Booth v. Wal-Mart Stores, Inc. Associates Health and Welfare Plan*, 201 F.3d 335, 342-43 (4th Cir. 2008), the Fourth Circuit identified "conflict of interest" as one of many factors

a court may consider in determining the reasonableness of a fiduciary's discretionary decision. The Court in *Booth* went on to discuss the role a conflict of interest might play in the analysis of a fiduciary's discretionary decision, stating:

> A fiduciary's conflict of interest, in addition to serving as a factor in the reasonableness inquiry, *may* operate to reduce the deference given to a discretionary decision of that fiduciary. We have held that a court, presented with a fiduciary's conflict of interest, *may* lessen the deference given to the fiduciary's discretionary decision to the extent necessary to neutralize any untoward influence resulting from that conflict.

*Booth*, 201 F.3d 335 at n.5 (citations and quotations omitted) (emphases added). In *Metropolitan Life Ins. Co. v. Glenn*, 128 S.Ct. 2343, 2346 (2008), the Supreme Court held that in considering a conflict of interest in ERISA cases, "a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and that the significance of the factor *will depend upon the circumstances of the particular case.*" (emphasis added). Therefore, because a conflict of interest may or may not operate to change the deference afforded to a fiduciary's decision, it appears that the nature and extent of that conflict must be evaluated to determine how the conflict should influence a reviewing court's consideration of the underlying fiduciary decision. That is, both *Glenn* and *Booth* suggest that not all conflicts of interest in ERISA cases should be viewed equally. Thus, because the conflict of interest must be evaluated to determine what role it should play in a reviewing court's analysis of a fiduciary's decision, I conclude that the limited discovery on the nature of the conflict of interest in this case is not "clearly erroneous and contrary to law." Fed. R. Civ. P. 72(a). Accordingly, Defendants objections to the discovery order will be overruled.

## IV. Conclusion

As stated herein, Defendants' motion to dismiss will be granted in part and denied in part, and I will deny Defendants' objections to the Magistrate Judge's order granting Plaintiff limited discovery on the conflict of interest question.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and accompanying Order to all counsel of record.

ENTERED: This __8th__ Day of April, 2010.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE